**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ELIMANE TALL,

*Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,

*Respondent.*

No. 06-72804

Agency No.
A93-008-485

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 12, 2008—San Francisco, California

Filed February 27, 2008

Before: Barry G. Silverman, M. Margaret McKeown, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Silverman

1753

## COUNSEL

Jeffrey M. Singletary, Snell & Wilmer L.L.P., Costa Mesa, California, for the petitioner.

Christopher Fuller and Russell J.E. Verby, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for the respondent.

## OPINION

SILVERMAN, Circuit Judge:

Elimane Tall, a native and citizen of Senegal, petitions for review of the Board of Immigration Appeals' summary affirmance of the Immigration Judge's decision finding him inadmissible for having been convicted of a crime of moral turpitude, namely California Penal Code § 350(a), which punishes "[a]ny person who willfully manufactures, intentionally sells, or knowingly possesses for sale any counterfeit . . . mark." Tall argues that California Penal Code § 350(a) is not a crime involving moral turpitude. We hold today that it is.

## I.   Facts

Tall first arrived in the United States in 1981 without a visa. Tall was paroled into the United States from May 26, 2003 to May 25, 2004 for purposes of pursuing an application for adjustment of status.

On October 3, 2003, Tall pled guilty to one count of counterfeit of a registered mark in violation of California Penal Code § 350(a)(2)[1] and was placed on probation for three years.

On December 24, 2003, Tall's application for adjustment of status was denied, and his appeal of this denial was dismissed on October 8, 2004.

---

[1]California Penal Code § 350(a) provides:

(a)   Any person who willfully manufactures, intentionally sells, or knowingly possesses for sale any counterfeit of a mark registered with the Secretary of State or registered on the Principal Register of the United States Patent and Trademark Office, shall, upon conviction, be punishable as follows:

(1)   When the offense involves less than 1,000 of the articles described in this subdivision, with a total retail or fair market value less than that required for grand theft as defined in Section 487, and if the person is an individual, he or she shall be punished by a fine of not more than five thousand dollars ($5,000), or by imprisonment in a county jail for not more than one year, or by both that fine and imprisonment; or, if the person is a corporation, by a fine of not more than one hundred thousand dollars ($100,000).

(2)   When the offense involves 1,000 or more of the articles described in this subdivision, or has a total retail or fair market value equal to or greater than that required for grand theft as defined in Section 487, and if the person is an individual, he or she shall be punished by imprisonment in a county jail not to exceed one year, or in the state prison for 16 months, or two or three years, or by a fine not to exceed two hundred fifty thousand dollars ($250,000), or by both that imprisonment and fine; or, if the person is a corporation, by a fine not to exceed five hundred thousand dollars ($500,000).

On December 1, 2004, Tall pled guilty to nine new counts of counterfeit of a registered mark and one count of counterfeit of a registered mark with a prior, all in violation of § 350, and he was sentenced to two years' imprisonment. Tall's guilty plea triggered the revocation of his 2003 probation and the imposition of another two year sentence to run concurrently with the sentence imposed for the new conviction.

On September 16, 2005, after the completion of Tall's prison sentence, the government served on Tall a Notice to Appear for removal proceedings, and Tall was taken into Department of Homeland Security custody. The government charged Tall as inadmissible for being an alien convicted of a crime involving moral turpitude under Immigration and Nationality Act § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I). The government also charged that, under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), Tall was an alien who, at the time of application for admission, was not in possession of a valid entry document.

On January 9, 2006, the IJ ordered Tall removed from the United States. The IJ adopted the government's position that "fraud is so inextricably woven into the statute as to clearly be an ingredient of the crime," *Matter of Flores*, 17 I&N Dec. 225, 228 (BIA 1980), and ruled Tall's convictions to be crimes involving moral turpitude. The IJ also upheld the invalid entry charge, noting that the only evidence submitted by Tall was a transit visa that expired on November 16, 1989. The IJ deemed Tall's application for asylum abandoned for lack of prosecution because he failed to submit it by the deadline. The IJ also rejected Tall's application for waiver of inadmissibility because of Tall's multiple felony convictions for a crime involving moral turpitude.

In his appeal to the BIA, Tall argued that his convictions were not for crimes of moral turpitude, he was not an "intending immigrant" without valid entry documents, and that the IJ violated his procedural due process rights by allowing uncerti-

fied documents as evidence of Tall's convictions. On May 1, 2006, the BIA affirmed the IJ's decision without opinion.

Tall timely petitions for review of the BIA's summary affirmance. Tall disputes the IJ's holding that he is removable under INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), as an alien convicted of a crime involving moral turpitude. Tall does not dispute the IJ's holding that he is removable under INA § 212(a)(7)(A)(i), 8 U.S.C. § 1182(a)(7)(A)(i) (invalid entry). Although not raised to the BIA, Tall now argues that the IJ violated his procedural due process rights by (i) not allowing Tall to offer evidence in defense of the charges brought against him, (ii) failing to provide Tall with adequate instructions as a pro se litigant, and (iii) refusing to grant Tall additional time to file his application for asylum and withholding of removal.

## II.    Analysis

### A.    Crime Involving Moral Turpitude

We lack jurisdiction to review BIA removal orders "against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2)," including crimes involving moral turpitude. 8 U.S.C. § 1252(a)(2)(C). However, we have jurisdiction to review "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D). Thus, we have jurisdiction to determine our jurisdiction—that is, to determine whether Tall's convictions qualify as crimes involving moral turpitude. *See Notash v. Gonzales*, 427 F.3d 693, 696 (9th Cir. 2005).

We review "the question of whether a state statutory crime constitutes a crime involving moral turpitude" de novo. *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1017 (9th Cir. 2005).

[1] "[A]ny alien convicted of, or who admits having committed, or who admits committing acts which constitute the

essential elements of . . . a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime . . . is inadmissible." 8 U.S.C. § 1182(a)(2)(A)(i)(I); *see Garcia-Lopez v. Ashcroft*, 334 F.3d 840, 843 (9th Cir. 2003). "To determine whether a conviction is for a crime involving moral turpitude, we apply the categorical and modified categorical approaches established by the Supreme Court." *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1067 (9th Cir. 2007) (en banc) (citing *Taylor v. United States*, 495 U.S. 575, 599-602 (1990)).

Under the categorical approach, we must "first make a categorical comparison of the elements of the statute of conviction to the generic definition, and decide whether the conduct proscribed by [§ 350(a)] is broader than, and so does not categorically fall within, this generic definition." *Huerta-Guevara v. Ashcroft*, 321 F.3d 883, 887 (9th Cir. 2002). In other words, the issue is "whether the full range of conduct encompassed by [§ 350(a)] constitutes a crime of moral turpitude." *Cuevas-Gaspar*, 430 F.3d at 1017. In making this determination, "we look only to the fact of conviction and the statutory definition of the prior offense." *Huerta-Guevara*, 321 F.3d at 887 (quotations omitted).

**[2]** "Crimes of moral turpitude are of basically two types, those involving fraud and those involving grave acts of baseness or depravity." *Navarro-Lopez*, 503 F.3d at 1074 (Reinhardt, J. concurring for a majority of the court) (quoting *Carty v. Ashcroft*, 395 F33d 1081, 1083 (9th Cir. 2005)). "A crime having as an element the intent to defraud is clearly a crime involving moral turpitude." *Id.* (internal quotation omitted). A crime whose nature is "inherently fraudulent" also qualifies as a crime of moral turpitude. *Id.* at 1076; *see also Goldeshtein v. INS*, 8 F.3d 645, 648 (9th Cir. 1993). "Our cases hold that in order to be inherently fraudulent, a crime must involve knowingly false representations made in order to gain something of value." *Navarro-Lopez*, 503 F.3d at 1076 (Reinhardt, J. concurring for a majority of the court).

**[3]** California Penal Code § 350(a) punishes "[a]ny person who willfully manufactures, intentionally sells, or knowingly possesses for sale any counterfeit of a mark registered with the Secretary of State or registered on the Principal Register of the United States Patent and Trademark Office." The statute defines "counterfeit mark" as "a spurious mark that is identical with, or confusingly similar to, a registered mark and is used on or in connection with the same type of goods or services for which the genuine mark is registered." § 350(e)(2).

**[4]** Under the categorical approach, § 350(a) is a crime involving moral turpitude because it is an inherently fraudulent crime. Either an innocent purchaser is tricked into buying a fake item; or even if the purchaser knows the item is counterfeit, the owner of the mark has been robbed of its value. The crime is really a species of theft. All of the conduct punished by § 350(a), "willfully manufactur[ing], intentionally sell[ing], or knowingly possess[ing] for sale any counterfeit . . . mark," is inherently fraudulent because each type of conduct "involve[s] knowingly false representations made in order to gain something of value." *Navarro-Lopez*, 503 F.3d at 1076. The commission of the crime necessarily defrauds the owner of the mark, or an innocent purchaser of the counterfeit items, or both.

**[5]** Because section 350(a) is a crime involving moral turpitude, the IJ correctly ruled that Tall's convictions rendered him inadmissible pursuant to Immigration and Nationality Act § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I).

## B.  Procedural Due Process

**[6]** Although Tall raised a procedural due process claim in his appeal to the BIA, Tall now argues that the IJ violated his procedural due process in ways not argued before the BIA. Due process claims are generally exempt from the exhaustion requirement "because the BIA does not have jurisdiction to

adjudicate constitutional issues." *Vargas v. INS*, 831 F.2d 906, 908 (9th Cir. 1987). However, procedural errors that can be remedied by the BIA are not exempted from the exhaustion requirement. *See Liu v. Waters*, 55 F.3d 421, 426 (9th Cir. 1995); *see also Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004) (finding no jurisdiction where "BIA could simply have ordered a rehearing" to remedy the alleged problems). In particular, "[t]he exhaustion requirement applies to claims that an alien was denied a 'full and fair hearing.' " *Agyeman v. INS*, 296 F.3d 871, 877 (9th Cir. 2002) (citation omitted).

**[7]** Here, the exhaustion requirement applies to Tall's claim that he was denied a full and fair hearing. *See id.* Although Tall raised his due process rights in his brief to the BIA, he only complained about the IJ allowing uncertified evidence to support the convictions against Tall. Tall did not give the BIA an opportunity to consider and remedy the particular procedural errors he raises now. Tall's current claim that he was denied a full and fair hearing requires exhaustion because the BIA could have provided a remedy if his complaints were found to be valid by ordering a rehearing to allow for additional evidence, further assistance to Tall as a pro se litigant, and additional time to file his asylum application. *See, e.g.*, *Barron*, 358 F.3d at 678. We lack jurisdiction to consider Tall's belated due process claims because he failed to properly exhaust his claims before the BIA.

**PETITION DENIED IN PART, AND DISMISSED IN PART.**